# In the United States Court of Federal Claims

<table>
<tr><td>

SAND POINT SERVICES, LLC,

       Plaintiff,

v.

THE UNITED STATES,

       Defendant,

</td><td>

No. 25-cv-77

Filed: April 7, 2026

</td></tr>
</table>

*Alex P. Hontos* of Dorsey & Whitney LLP, Minneapolis, MN, appeared for Plaintiff.  With him on the briefs were *Bryan C. Keane* and *Evan J. Livermore* of Dorsey & Whitney LLP, Minneapolis, MN.

*Joshua D. Tully* of the United States Department of Justice, Civil Division, Washington, D.C. appeared for Defendant.  With him on the briefs were *Patricia M. McCarthy* and *Yaakov M. Roth*, of the United States Department of Justice, Civil Division, Washington, D.C.

### MEMORANDUM AND ORDER

This is a Contract Disputes Act case involving dueling allegations of fault related to delays incurred during the demolition and renovation of buildings on a United States military base. Specifically, in 2019, the Army Corps of Engineers (Corps or Corps of Engineers) awarded Plaintiff Sand Point Services, LLC (Plaintiff or Sand Point) a contract to demolish, renovate, and repair two barracks at Fort Gordon,[1] Georgia.  ECF No. 1 (Complaint) ¶¶ 14, 17.  Subsequently, however, delays arose on the project, with each party blaming the other for the setbacks.  *Id.*  The Corps blamed Sand Point for the delays, and accordingly partially terminated Sand Point's contract

---

[1] During part of the period of performance relevant to this case, the base was named Fort Eisenhower, but was later renamed Fort Gordon in 2025.  History, https://home.army.mil/gordon/about/history.  "Fort Gordon is now named in honor of Medal of Honor recipient Master Sgt. Gary I. Gordon for his valor during the 1993 Battle of Mogadishu, Somalia*." Id.*  This Memorandum and Order uses the current name.

for default.  *Id.* ¶ 29.  In contrast, Sand Point contends the delays were either the Corps' fault or were otherwise excusable, and thus that the Corps' partial termination for default was improper. *Id.* ¶ 39.   Plaintiff seeks to convert the partial termination for default into a termination for convenience.  *Id.* ¶ 6.

Defendant the United States, acting on behalf of the Corps (collectively, Defendant or the Government), moves to dismiss the third of four counts in Sand Point's Complaint for failure to state a claim pursuant to Rule 12(b)(6).  ECF No. 8 (Motion to Dismiss or Motion) at 4.[2]  Count Three alleges that Defendant's partial default termination was improper because (i) Defendant's contracting officer (CO) failed to follow proper procedure and (ii) Defendant's decision to terminate was pretextual and motivated by animus.  Compl. ¶ 63.  Plaintiff contends that the failure of a CO to follow procedure can be evidence of a pretextual termination, and that its allegations of animus and a failure to follow procedure collectively state a claim of pretextual termination.  ECF No. 9 (Response) at 12–13.  Defendant argues that any purported failure by the CO to follow the procedure at issue—the FAR 49.402-3(f)[3] factors—does not invalidate a default termination, and that the facts pleaded in Plaintiff's Complaint are insufficient to establish pretextual termination and animus.  Mot. at 4.  Additionally, in the event that the Court dismisses Count Three, Plaintiff seeks to amend its Complaint.  Resp. at 13.

As described more fully below, the Court agrees with Defendant that the failure to follow the procedure set forth in FAR 49.402-3(f) alone is an insufficient basis to overturn a default termination.  However, the Court agrees with Plaintiff that, for purposes of the present 12(b)(6)

---

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

[3] The Federal Acquisition Regulation (FAR) is contained in Chapter 48 of the Code of Federal Regulations. All references to the FAR are shorthand for "48 C.F.R. §."

motion only, allegations of a failure to follow procedure combined with an allegation of animus could establish a pretextual termination. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Partial Motion to Dismiss (ECF No. 8) pursuant to Rule 12(b)(6). The Court dismisses without prejudice Count Three of the Complaint (ECF No. 1) with respect to its claim that Defendant's termination for default was improper solely because the contracting officer did not consider all FAR 49.402-3(f) factors. The Court denies the remainder of Defendant's Partial Motion to Dismiss Count Three because the Complaint adequately pleads a claim of pretextual termination. As further explained below, the Court also **GRANTS** Plaintiff leave to file a motion to amend its Complaint.

## FACTUAL BACKGROUND[4]

Sand Point is an Alaska Native Corporation that participated in the Corps of Engineers' Trainee Barracks Upgrade Program Multiple Award Task Order Contract (MATOC). Compl. ¶¶ 12–13. On September 20, 2019, the Corps of Engineers awarded Sand Point a task order for the "Demolition, Renovation, and Repair of" two buildings at Fort Gordon, Georgia—Buildings 25702 and 25707. *Id.* ¶ 14. Under the original contract, Sand Point agreed to complete the demolition, repair, and renovation of both buildings by January 21, 2022. *Id.* ¶ 15.

On November 6, 2019, the Corps issued a Notice to Proceed. *Id.* The contract originally stipulated that by October 7, 2020, the Corps would turn over to Sand Point Building 25707, the building at the center of this litigation. *Id.* ¶ 16. According to that original schedule, Sand Point

---

[4] As this is a Rule 12(b)(6) motion to dismiss, the Court does not make factual findings; rather, the Court accepts the well-pleaded facts in the Complaint as true for purposes of resolving this motion. *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) ("We take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." (quoting *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017))).

had roughly 15 months from that point until the completion deadline to complete the demolition, renovation, and repair of Building 25707.  *See id.*

Plaintiff asserts that the Corps failed to turn Building 25707 over to Sand Point on time and that accordingly, Plaintiff could not meet the original deadline.[5]  *Id.* ¶ 21.  According to the Complaint, the Corps turned Building 25707 over to Plaintiff in August 2022, approximately 22 months later than the Contract originally required.[6]  *Id.* ¶ 17.  On April 5, 2022, before the Corps had turned over the building, the Corps allegedly extended the period of performance for the first time and set March 1, 2023, as Sand Point's new contract completion deadline.  *Id.* ¶ 18.  Sand Point does not specify in its Complaint whether the Corps extended the deadline unilaterally or with Sand Point's agreement.  *See id.*

Plaintiff asserts that delays mounted after the Corps turned Building 25707 over to Sand Point.  Sand Point asserts that it lost its planned demolition-and-abatement subcontractor, allegedly due to the Corps' delays in turning over the building.  *Id.* ¶ 22.  According to Sand Point, it "could not execute a subcontract with" its new subcontractor, Certified Restoration Group (CRG), until October 31, 2022, more than two months after Sand Point had received its delayed access to Building 25707.  *Id.* ¶¶ 23–24.  In November 2022, CRG submitted its demolition-and-abatement work plans to the Corps for approval.  *Id.* ¶ 25.  On January 18, 2023, the Corps approved CRG's plans.  *Id.*  In a January 2023 schedule update, Sand Point allegedly projected a completion date of December 27, 2024.  *Id.* ¶ 26.

---

[5] Sand Point does not explain in its Complaint the reason for the Corps' delay.  *See* Compl. ¶ 17.

[6] The Complaint did not specify an exact date on which the Corps turned over the building but instead noted the month and year.  *See* Compl. ¶ 17.

Delays continued.  Sand Point alleges that its inability "to obtain and retain labor at the levels required to maintain the revised Project schedule" contributed to further delays.  *Id.* ¶ 27. Sand Point attributes these delays to a "material change in circumstances" caused by the Corps' delay in turning over the building.  *Id.* ¶ 28.

On August 14, 2023, the Corps extended the period of performance for a second time and set a new contract completion date of November 25, 2023.  *Id.* ¶ 18.  This new completion date was based on the August 2022 turnover date and reflected a roughly "15-month construction period—the same period as originally contemplated under the Contract."  *Id.* ¶ 20.  Subsequently, Sand Point asserts that it encountered further delays, so that its expected completion date slipped to May 2025.[7]  *Id.* ¶ 30.

"On January 19, 2024, the Government partially terminated the Contract for default" for the portion of the contract "with respect to Building 25707."  *Id.* ¶ 29.  According to Sand Point, the Corps blamed the partial default termination on Plaintiff's missed November 25, 2023, deadline and a "purported lack of progress."  *Id.*  On April 1, 2024, the Corps terminated the contract in full (i.e., terminated the remaining portion of the contract—concerning Building 25702).  *Id.* ¶ 31.

Following the Corps' termination of the remainder of the contract, Sand Point's performance bond surety, Zurich American Insurance Company and Fidelity & Deposit Company of Maryland (Zurich American) assumed responsibility for performance.  *Id.* ¶ 32.  Pursuant to an April 29, 2024, agreement between Zurich American and the Corps, the Corps allowed Sand Point to continue its work as Zurich American's subcontractor for 120 days.  *Id.*  That period was later

---

[7] Sand Point's Complaint does not specify a date on which it provided this expected completion date.  *See* Compl. ¶ 30.

extended, and at the time it filed its Complaint, Sand Point remained the subcontractor performing on the project.  *Id.*  At that time, Sand Point was authorized to perform as a subcontractor through February 28, 2025.  *Id.*  Sand Point alleges that the Corps' termination for default caused further delays on the project:

> Ironically, the Government's termination for default, and the resulting periods of demobilization, remobilization, and contract negotiation, caused substantial additional delay to the Project, and will result in Building 25707 being completed later than it would have been if the Government had not terminated the Contract and had allowed [Sand Point] to complete that Building.

*Id.* ¶ 33.

## **PROCEDURAL HISTORY**

On January 16, 2025, Sand Point filed its Complaint, asserting four counts, all of which sought to convert the partial default termination of the Building 25707 work into a termination for convenience.[8]  *See* Compl. ¶¶ 40, 51, 64, 70.  Subsequently, Defendant filed the present Motion to Dismiss the Complaint in Part, and the Court conducted oral argument on March 3, 2026.  Minute Entry dated Mar. 3, 2026.  The Motion is fully briefed and ripe for review.[9]

---

[8] Count One seeks to convert the partial default termination to a termination for convenience on the basis that the delay was allegedly excusable.  Compl. ¶ 38.  Count Two seeks to convert the partial default termination on the basis that the Corps allegedly waived deadlines.  *Id.* ¶ 50.  Count Three seeks to convert the partial default termination on the basis that the CO allegedly failed to consider FAR factors and purportedly acted in bad faith.  *Id.* ¶ 63.  Count Four seeks to convert the partial default termination on the basis that the Corps allegedly materially breached the contract.  *Id.* ¶ 69.

[9] *See* Defendant's Motion to Dismiss the Complaint in Part, seeking to dismiss only Plaintiff's Count Three under Rule 12(b)(6) (ECF No. 8); Sand Point's Response in Opposition (ECF No. 9); Defendant's Reply in support of its Motion (ECF No. 10) (Reply).

## APPLICABLE LEGAL STANDARD – MOTION TO DISMISS

### I.    Contract Disputes Act

This Court's Tucker Act jurisdiction includes claims brought under the Contract Disputes Act (CDA), including claims brought for non-monetary relief.  28 U.S.C. § 1491(a)(2) ("including a dispute concerning termination of a contract").  The CDA governs contract disputes for "any express or implied contract" entered into by an "executive agency" for, *inter alia*, "the procurement of construction, alteration, repair, or maintenance of real property."  41 U.S.C. § 7104(a)(3). "When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution."  *Tex. Health Choice, L.C. v. Off. of Pers. Mgmt.*, 400 F.3d 895, 898–99 (Fed. Cir. 2005) (alteration in original) (quoting *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995)).  The CDA imposes strict jurisdictional prerequisites, which must be met for each individual claim.  *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (citing *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed. Cir. 1985)); *see also M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327–32 (Fed. Cir. 2010).  To establish jurisdiction under the CDA, a plaintiff must ordinarily demonstrate that it (i) submitted each claim in writing to the contracting officer, and (ii) received a final decision from the contracting officer on each claim.  41 U.S.C. § 7103; *see K-Con Bldg. Sys.*, 778 F.3d at 1005; *see also Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775 (Fed. Cir. 2021) ("The CDA mandates that '[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision.'" (quoting 41 U.S.C. § 7103(a)(1))).

However, even if the contractor has not presented a written claim to the CO, the CDA still confers jurisdiction on this Court to hear a contractor's attempt to convert a termination for default into a termination for convenience.  *See Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1363 (Fed. Cir. 2018) (abrogated on other grounds) ("[A] termination for default is a

government claim not subject to CO presentment under the CDA."); *see also Groundbreaker Dev. Corp. v. United States*, 163 Fed. Cl. 619, 625–26 (2023) (finding jurisdiction over claim to convert default termination into termination for convenience but not over monetary claims without presentment). After the CO issues the termination for default, the contractor has 12 months to bring suit in the Court of Federal Claims. *See* 41 U.S.C. § 7104(b)(3).

## II.      Rule 12(b)(6) Motion to Dismiss

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff also must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (second alteration in original) (internal citations omitted). "The Court of Federal Claims may properly grant a motion to dismiss under [Rule] 12(b)(6) when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).

At the motion to dismiss stage, this Court must "take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) (quoting *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017)). The Court, however, need not "accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). In addition, where facts pled "are actually *inconsistent* with and contradict [the claim], they are likewise insufficient to

8

state a plausible claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed Cir. 2021) (emphasis in original). The Court "must consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## DISCUSSION

Pursuant to Rule 12(b)(6), Defendant seeks to dismiss Count Three, which pleads (i) procedural errors and (ii) pretextual termination by the CO. *See* Compl. ¶ 63. The Court addresses each claim in turn.

*First*, the Court considers the claim that comprises most of Count Three; Plaintiff alleges that the CO "was unreasonable" and did "not demonstrate a reasonable exercise of discretion" by failing to evaluate all the FAR 49.402-3(f) factors before termination. *Id.* Defendant argues that the CO's failure to follow the factors "could not invalidate a termination for default." Mot. at 8.

*Second*, the Court considers the claim of pretext in Count Three, in which Plaintiff alleges the termination decision was based upon "impermissible animus." Compl. ¶ 63. Defendant asserts in response that Plaintiff fails to plead sufficient facts to establish a plausible claim for relief. Mot. at 8.

*Third*, after concluding that Count Three should be dismissed in part, the Court considers whether to grant Plaintiff's request for leave to amend its Complaint. *See* Resp. at 13.

## I.    CO's Failure to Consider Every FAR 49.402-3 Factor

Plaintiff dedicates most of Count Three (¶¶ 52–64) to its allegation that "the Government partially terminated the Contract for default without considering the required factors" listed in FAR 49.402-3(f). Compl. ¶ 63. Specifically, Plaintiff contends that the Corps' partial termination for default was improper because the CO purportedly made the decision "without consulting the

9

required factors" listed in FAR 49.402-3(f).  Compl. ¶ 63.  That federal regulation dictates seven

factors that the CO "shall consider" before issuing a default termination.  FAR 49.402-3(f).

Specifically, FAR 49.402-3(f) states:

> The *contracting officer shall* consider the following factors in determining whether
> to terminate a contract for default:
>
> (1) The terms of the contract and applicable laws and regulations.
> (2) The specific failure of the contractor and the excuses for the failure.
> (3) The availability of the *supplies* or services from other sources.
> (4) The urgency of the need for the *supplies* or services and the period of time
> required to obtain them from other sources, as compared with the time delivery
> could be obtained from the delinquent contractor.
> (5) The degree of essentiality of the contractor in the Government *acquisition*
> program and the effect of a *termination for default* upon the contractor's
> capability as a supplier under other contracts.
> (6) The effect of a *termination for default* on the ability of the contractor to
> liquidate guaranteed loans, progress payments, or advance payments.
> (7) Any other pertinent facts and circumstances.

FAR 49.402-3(f) (emphasis added).

Plaintiff claims that the CO "failed to consider" or "failed to adequately consider" four

issues that are relevant to the factors: "whether urgency in completing the Project was required at

the time of the termination," Compl. ¶ 58; "whether the adjusted Contract completion date of

November 25, 2023 remained critical to the Government or that time was of the essence," *id.* ¶ 59;

"the explanations [Sand Point] offered for excusable delay," *id.* ¶ 60; and "the period of time

required to obtain the contracted supplies or services from other sources," *id.* ¶ 61.  Plaintiff does

not allege that the FAR 49.402-3(f) factors weighed against a partial termination for default based

on the underlying facts of *contract performance*; rather, Plaintiff contends that *the CO failed to*

*consider* all the factors and thus made an unreasonable decision.[10]  *See id.*  Plaintiff asserts

---

[10] Plaintiff also argues that the CO's failure to consider all the FAR 49.402-3(f) factors contributed
to an alleged pretextual termination.  This argument is addressed in Section II of this Memorandum
and Order.  *See infra* Discussion II.

irrationality because in its view, the CO could not have developed a "reasonable belief" that the partial default termination was justified without considering all the factors. *Id.* ¶ 55 (quoting *Alutiiq Mfg. Contractors, LLC v. United States*, 143 Fed. Cl. 689, 696 (2019)). Plaintiff contends that this Court can and should overturn the termination because "the totality of the circumstances"—namely, the CO's failure to consider all the factors—"does not demonstrate a reasonable exercise of discretion." Compl. ¶ 63. Plaintiff argues that "it is commonplace in this Court and in the Federal Circuit to look to the FAR 49.402-3(f) factors in determining whether a contract was properly terminated for default, even though those factors are not alone dispositive of the question." Resp. at 10.

Defendant seeks to dismiss this claim concerning the CO's failure to consider every FAR 49.402-3(f) factor because, if proven, such a failure would not establish a claim for relief. Mot. at 7. According to Defendant, this Court should not assess whether the CO "reasonably explained" a termination decision but rather should evaluate whether the termination itself was justified based on the underlying facts of contract performance. *Id.* (citing *Dep't of Transp. v. Eagle Peak Rock & Paving, Inc.*, 69 F.4th 1367, 1377 (Fed. Cir. 2023)). The issue is whether a CO's alleged failure to consider all the factors is sufficient to invalidate a default termination on the ground that such a failure demonstrates that the partial default termination "was unreasonable." Compl. ¶ 63.

The answer is "no." The CO's "failure to consider one or more of the [FAR] 49.402-3(f) factors therefore does not require that a default termination be converted into a termination for the convenience of the government." *DCX Inc. v. Perry*, 79 F.3d 132, 135 (Fed. Cir. 1996); *see also ASG Sols. Corp. v. United States*, 170 Fed. Cl. 485, 507 (2024) ("The provision of the FAR setting out these factors does not confer any enforcement rights on a defaulting contractor."). This Court does not review the rationality of the CO's decision, as it might review administrative actions in

11

other types of cases; instead, it engages in its own de novo review of the underlying facts to determine whether the CO's actions were justified.  41 U.S.C. § 7104(b)(4); *see Wilner v. United States*, 24 F.3d 1397, 1401–02 (Fed. Cir. 1994) (en banc) ("De novo review precludes reliance upon the presumed correctness of the decision. Thus, once an action is brought following a contracting officer's decision, the parties start in court or before the [Board of Contract Appeals] with a clean slate." (cleaned up)).

Plaintiff cites other cases suggesting that this Court should engage in a different standard of review and that a failure to consider the factors might indicate "whether a contracting officer has abused his discretion."  Resp. at 10 (citing *DCX*, 79 F.3d at 135); *see also* Resp. at 12 (citing *H&M Assocs., LLC v. United States*, 165 Fed. Cl. 174, 186 (2023); *Alutiiq Mfg. Contractors*, 143 Fed. Cl. at 697).  Plaintiff, however, fails to address or heed a recent admonition from the Federal Circuit that "the reasoning of the contracting officer at the time of the termination is not the subject of the CDA adjudication," absent evidence of pretextual or bad-faith termination.  *Dep't of Transp. v. Eagle Peak Rock & Paving, Inc.*, 69 F.4th 1367, 1377 (Fed. Cir. 2023).  In *Eagle Peak*, a construction contractor appealed its termination for default to the Civilian Board of Contract Appeals (CBCA).[11]  *Id.* at 1372–73.  The CBCA overturned the default termination because it found that the CO had "'failed to consider' . . . a number of factors" prescribed in FAR 49.402-3(f).  *Id.* at 1374.  Rather than conduct a de novo analysis of the facts of the case to determine whether termination was justified, the CBCA analyzed whether the CO made the termination decision "in a fair and reasonable manner."  *Id.*  On appeal, the Federal Circuit vacated the decision because such an analysis of the reasonableness of the CO's decision did not accord with the de

---

[11] The CBCA applies the same de novo review standard of review to contract termination decisions under the CDA as does the Court of Federal Claims.  *Eagle Peak*, 69 F.4th at 1375.

novo standard of review required in CDA cases. *Id.* at 1378. The de novo standard requires an assessment of the "evidentiary record developed in the proceeding." *Id.* at 1375. The Federal Circuit clarified that its own precedent did not endorse an "arbitrary and capricious" standard of review, even though the Federal Circuit "sometimes used broader language about whether the contracting officer's decision was 'arbitrary and capricious' or an 'abuse of discretion.'" *Id.* at 1377.

Here, Plaintiff asks this Court to overturn the CO's decision because the CO allegedly did not consider all the mandatory factors and the decision "does not demonstrate a reasonable exercise of discretion." Compl. ¶ 63. A failure to follow procedure might be a sign of a pretextual termination, as part of a "threshold inquiry" related to bad faith. *See Eagle Peak*, 69 F.4 at 1378 n.1 (citing *DCX*, 79 F.3d at 135). Defendant contends this "threshold inquiry" is "properly limited to whether the termination decision was pretextual and unrelated to performance."[12] Mot. at 8 (quoting *Eagle Peak*, 69 F.4th at 1378 n.1). Plaintiff argues that the Court can review the CO's reasoning even outside the issue of pretextual or bad faith termination. Resp. at 10. However, each case that Plaintiff cites in support predates *Eagle Peak*; as Defendant notes, Plaintiff does not identify any decisions after *Eagle Peak* in which a court applied an abuse of discretion standard to evaluate a contract termination, nor does Plaintiff convincingly explain how such a review would survive after *Eagle Peak*'s clarification of the de novo standard of review.[13] *See* Reply at 5; Resp.

---

[12] The Court addresses the pretext argument in its discussion of Plaintiff's claims of pretextual termination. *See infra* Discussion II.

[13] At oral argument, Plaintiff raised, for the first time, the argument that the Court of Federal Claims has applied an abuse of discretion standard after *Eagle Peak*, and cited *SLSCO, Ltd. v. United States*, 176 Fed. Cl. 767, 780 (2025), as an example. ECF No. 15 (Certified Transcript of March 3, 2026, oral argument) (OA Tr.) at 31:6. Plaintiff did not cite *SLSCO* in its brief. *See* Resp.; OA Tr. at 32:2–3 ("This is not in the brief. This is one I found preparing for the argument."). As this argument was not raised in Plaintiff's Response brief and Plaintiff did not seek to

at 10, 12.  As such, the Court must apply the de novo standard, under which allegations about "the reasoning of the contracting officer at the time of termination" are irrelevant.  *Eagle Peak*, 69 F.4th at 1377.  As Plaintiff's claim in Count Three concerns the CO's reasoning at the time of termination, the Court must dismiss Count Three to the extent that it challenges the CO's reasoning beyond the limited question of pretextual termination.  *See id.*

Plaintiff disagrees and points to *Schneider* as precedent that examines the CO's review of the FAR 49.402-3(f) factors even in a de novo review.  Response at 10–11 (citing *Schneider* as an example of when this Court might "look to the FAR 49.402-3(f) factors in determining whether a contract was properly terminated for default"); *see Schneider Elec. Bldgs. Ams., Inc. v. United States*, 163 Fed. Cl. 708 (2023).  Plaintiff is correct that the *Schneider* court cited the factors when overturning a termination for default; however, that opinion supports the Defendant's proposed standard of review here, not Plaintiff's.  *See Schneider*, 163 Fed. Cl. at 717–18.  Instead of reviewing the CO's termination decision for rationality and compliance with procedure, as Plaintiff would have this Court do, the *Schneider* court examined both the CO's reasoning *and* any new arguments raised during litigation by the Government to determine, de novo, whether default

---

supplement the briefing with this case before oral argument, Plaintiff has waived this argument.  *See Naltner v. United States*, 173 Fed. Cl. 738, 759 n.27 (2024) (argument waived if it is first raised at oral argument); *Square One Armoring Servs. Co. v. United States*, 162 Fed. Cl. 331, 343 (2022) (arguments not raised in briefs are waived).  Even if Plaintiff had not waived its argument about *SLSCO*, that decision would not affect this case because *SLSCO* (a Court of Federal Claims case that does not bind this Court) interpreted the impact of *Eagle Peak* upon challenges to contractor performance ratings, for which Federal Circuit precedent states judges must apply an arbitrary and capricious standard of review to CO evaluations.  *See SLSCO*, 176 Fed. Cl. at 780 (citing *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1316 (Fed. Cir. 2011)).  In contrast, this case concerns default termination, for which the court in *Eagle Peak* clearly held that the arbitrary and capricious standard of review does not apply.  *See Eagle Peak*, 69 F.4th at 1377 ("[T]he CDA adjudication . . . must proceed on the evidence and arguments made in the adjudicatory proceeding, *not through arbitrary-and-capricious or abuse-of-discretion review*." (emphasis added)).

14

termination was justified; it did not make its decision based on the sufficiency of the CO's reasoning. *Schneider*, 163 Fed. Cl. at 718 (referencing CO's decision and government's summary judgment briefs as sources of possible justifications for termination in de novo analysis). The stray reference in *Schneider* to "a critical flaw in the CO's reasoning," *id.*, exemplifies the "broader language" that the Federal Circuit warned about in *Eagle Peak*, 69 F.4th at 1377, rather than an example of the standard of review that Plaintiff seeks, *see* Resp. at 10. As such, *Schneider* demonstrates the Court's proper scope of review in this case: whether the partial default termination was justified based on the facts of performance, rather than whether the CO properly documented consideration of the FAR 49.402-3(f) factors. *See id.*[14]

Plaintiff argues that *Eagle Peak* is "distinguishable" at the motion to dismiss stage because that decision evaluated a decision of the CBCA based on the Board's "merits consideration and findings of fact." Resp. at 9. Plaintiff's brief does not explain why *Eagle Peak*, which interprets the CDA, would apply to the merits of a case but not to a motion to dismiss. *See id.* To the contrary, a case's posture does not change the CDA's legal standard of review. Substantive law is the same at the motion to dismiss and merits stages—only the evidence that courts may consider changes—and courts assessing a motion to dismiss may cite precedent that interprets statutes at the summary judgment stage. *See, e.g., Steffen*, 995 F.3d at 1379 (citing a case decided at the summary judgment stage for the legal standard at the motion to dismiss stage). As Plaintiff's counsel acknowledged at oral argument, "the law is the law from the beginning of the case to the end of the case." ECF No. 15 (Certified Transcript of March 3, 2026, oral argument) (OA Tr.) at

---

[14] To successfully rely upon *Schneider*, then, Plaintiff should have pled that the partial default termination was not justified based on the facts of performance, rather than that partial termination was not justified because "the Contracting Officer failed to consider" those same facts. *See* Compl. ¶¶ 58–61.

15

45:10–11.  *Eagle Peak* is relevant here because it supplies the standard under which this Court must review facts from the contract dispute, whereas the distinction between a Rule 12(b)(6) motion to dismiss and summary judgment is relevant only to what facts the Court may consider. *Compare Boyd*, 134 F.4th at 1352 (considering facts pled in complaint as true at motion to dismiss stage), *with* Rule 56(c)(1)(A) (requiring the Court to consider facts in the record at summary judgment).    Plaintiff's argument that the *Eagle Peak* decision depended upon that case's procedural posture is not reflected in the reasoning of the decision.  *See* OA Tr. at 46:8; *Eagle Peak*, 69 F.4th at 1375.  Based on the facts asserted in the Complaint, Plaintiff has failed to state a viable claim for relief in Count Three by alleging that the CO failed to consider every FAR 49.402-3(f) factor.

## II.    Allegation of a Pretextual Termination

In addition to the claim that the CO failed to consider all the FAR 49.402-3(f) factors, Plaintiff alleges in Count Three that the partial termination decision was pretextual and that the CO acted "based upon impermissible animus toward [Sand Point]."  Compl. ¶ 63.[15]  *Eagle Peak* held that the CO's reasoning can be considered for a limited "threshold inquiry," as long as "that threshold inquiry is properly limited to whether the termination decision was pretextual and unrelated to performance."  *Eagle Peak*, 69 F.4th at 1378 n.1.  Defendant contends that, even if proven, Plaintiff's allegations would still be insufficient to overcome the "strong presumption" that agencies act in good faith, so the Complaint fails to state a plausible claim of pretextual

---

[15] Plaintiff intersperses its allegations and arguments about bad faith with references to the implied duty of good faith and fair dealing.  *See* Compl. ¶ 63; Resp. at 12.  However, Plaintiff clarified at Oral Argument that it did not seek to bring a separate claim based on a breach of the implied duty of good faith and fair dealing.  OA Tr. at 6:23–24 ("We're not bringing a standalone good faith and fair dealing claim.").  As such, the Court construes the Complaint's stray references to good faith and fair dealing as part of the pretext argument.  *See Irwin County v. United States*, 170 Fed. Cl. 355, 373 n.10 (2024) (treating references to good faith and fair dealing as "derivative of the bad faith arguments" when the terms are used interchangeably).

16

decision-making. Mot. at 8. Defendant argues that the Complaint "fails to plausibly allege any supporting facts, let alone facts that could overcome the strong presumption that the Government terminated Sand Point for the reasons stated in the termination notice." *Id.* at 9. Plaintiff asserts that the CO's failure to consider all the factors and Plaintiff's explanations for the delay, combined with an allegation of animus, is sufficient to plead pretextual termination. Resp. at 12.

To demonstrate that a government contracting official had a pretextual basis for a decision, a plaintiff must overcome the presumption that the Government and its officials undertake their duties in good faith. *See Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1288 (Fed. Cir. 2010); *see also Road & Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012) ("We and our predecessor court, the Court of Claims, have long upheld the principle that government officials are presumed to discharge their duties in good faith."). This presumption can only be overcome with "well-nigh irrefragable proof." *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002) (equating "well-nigh irrefragable proof" with the clear and convincing evidence standard); *Kalvar Corp., Inc. v. United States*, 211 Ct. Cl. 192, 198–99, 543 F.2d 1298, 1302 (1976) ("In the cases where the court has considered allegations of bad faith, the necessary 'irrefragable proof' has been equated with evidence of some specific intent to injure the plaintiff."). Plaintiffs must demonstrate that a government official acted with a "specific intent to injure the plaintiff" to establish bad faith. *Am-Pro*, 281 F.3d at 1240 (quoting *Kalvar*, 211 Ct. Cl. at 199); *see Road & Highway Builders*, 702 F.3d at 1369.

Defendant contends that the Court may only consider the CO's alleged failure to evaluate all the FAR 49.402-3(f) factors if it first determines that the CO acted pretextually. Reply at 7 ("A contracting officer's consideration of those factors only becomes relevant *after* a plaintiff has plausibly alleged that 'the termination decision was pretextual and unrelated to performance.'"

17

(quoting *Eagle Peak*, 69 F.4th at 1378 n.1) (emphasis in original)).  Defendant here misreads *Eagle Peak* and ignores binding precedent.  Indeed, the Federal Circuit cited the failure to follow the precursor to the FAR 49.402-3(f) factors as evidence of pretextual reasoning in *Darwin Construction*.  *See Darwin Constr. Co. v. United States*, 811 F.2d 593, 598–99 (Fed. Cir. 1987).  In that case, the CO's failure to follow proper termination procedures helped a contractor demonstrate that the agency "used the termination article as a 'device' and never made a 'judgment as to the merits of the case.'"  *Id.* at 596 (quoting *Schlesinger v. United States*, 390 F.2d 702, 709 (Ct. Cl. 1968)).  *Eagle Peak*, in turn, explicitly relies upon *Schlesinger* and *Darwin Construction* to determine the scope of the "threshold issue" of pretextual termination.  *Eagle Peak*, 69 F.4th at 1376 ("Specifically, the termination-for-default decision must be performance-based and not pretextual, under the *Schlesinger* and *Darwin Construction* decisions.").  As such, the alleged failure to follow procedure can contribute to Plaintiff's claim of a pretextual termination.

Considering all the facts pled, Sand Point makes sufficient allegations of pretextual termination to withstand the Rule 12(b)(6) standard.  *See Iqbal*, 556 U.S. at 678.  Under that standard, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Monbo v. United States*, No. 24-1683, 2025 WL 869037, at *7 (Fed. Cl. Mar. 19, 2025) (finding the plaintiff's "threadbare recital of a cause of action's elements" insufficient to meet the *Iqbal* standard).  Rather, the standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  At oral argument, Plaintiff stated that its pretext claim derives from paragraphs 4, 54, 57, 62, and 63 of the Complaint.  OA Tr. at 26:10–11.  Paragraphs 54 and 57 merely recite case law.  *See* Compl. ¶¶ 54, 57.  Paragraph 4 alleges that "[t]he Contracting Officer failed to consider and document the mandatory default-termination factors . . . and

impermissibly terminated based upon animus toward the contractor." Compl. ¶ 4. Paragraph 62 alleges more detailed facts about the alleged animus: "the Contracting Officer was improperly motivated by animus toward [Sand Point], including [Sand Point's] performance of other United States Government contracts." *Id.* ¶ 62; *see also* Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Paragraph 63 further alleges that the combination of the failure to follow mandatory termination procedures and the existence of animus means that the decision "does not demonstrate a reasonable exercise of discretion" by the CO. Compl. ¶ 63.

Plaintiff's allegations of pretext, if proven, would resemble the facts of the *Darwin Construction* decision, upon which *Eagle Peak* relied. *See Darwin Constr.*, 811 F.2d at 596. There, the court found that the agency's failure to follow proper termination procedure and the agency's animus toward the contractor (the desire "to rid the Navy of having to deal with Darwin") could provide sufficient evidence that the agency acted pretextually. *Id.* Similarly, here, the Complaint pleads that the CO harbored animus toward Plaintiff and that the failure to follow procedure is evidence that the CO acted pretextually. Compl. ¶¶ 4, 62, 63. Although it may have been advisable for Plaintiff to include more particular facts about animus in its Complaint, here, construing the facts pled in the light most favorable to the Plaintiff, the Court finds that Plaintiff has adequately plead pretext sufficient to withstand a 12(b)(6) motion to dismiss. *See Boyd*, 134 F.4th at 1352.

Defendant compares this case to *Irwin County*, a Court of Federal Claims case in which a claim was dismissed based on a failure to plead pretextual termination. *See Irwin County v. United States*, 170 Fed. Cl. 355, 373 (2024). There, the complaint pled only conclusory allegations of bad faith termination. *Id.* ("Plaintiffs have alleged no facts that suggest that DHS's stated reason for

19

terminating its contract with them was pretextual, and the evidence they do submit supports the opposite conclusion."). The plaintiff in *Irwin County* attached several documents to its complaint contradicting  plaintiff's allegation that the termination was undertaken in bad faith. *Id.* at 371–72; *see Bot M8*, 4 F.4th at 1354 ("Where, as here, the factual allegations are actually *inconsistent* with and contradict [the claim], they are likewise insufficient to state a plausible claim."). In particular, in *Irwin County*, the complaint alleged that a government official had defamed plaintiff in a government memo, but a copy of a report that Plaintiff attached to the complaint as support revealed that the government had relied on other unfavorable evaluations of plaintiff rather than on the allegedly defamatory statements. *Irwin County*, 170 Fed. Cl. at 372. In contrast, here, Plaintiff has not pleaded such contradictory facts. Plaintiff does not attach any documents to the Complaint. *See* Compl. Although Plaintiff describes a plausible non-pretextual basis for the partial default termination—performance was delayed, Compl. ¶ 29—the "status of technical default" is not enough to contradict an allegation of pretextual termination, *Schlesinger*, 390 F.2d at 583–84. As Plaintiff only barely pleads enough facts to state a claim under Rule 12(b)(6), it has not pleaded so many additional or contradictory facts that it might "plead[] itself out of court." *Bot M8*, 4 F.4th at 1354.

## III.    Leave to Amend the Complaint

Plaintiff also seeks leave to amend the Complaint should the Court grant Defendant's Motion. Resp. at 13 ("the Court should permit [Sand Point] to amend the Complaint rather than dismiss[] Count III"). In its Reply, Defendant did not discuss or contest Plaintiff's request to amend. *See* Reply at 9. At oral argument, Defendant represented that it did not consent to the request to amend because it was not clear what amendment would include. OA Tr. at 9:20–22 ("I struggle to try to agree to an amended complaint at this point, when I don't know if the amendments are going to be futile or not.").

Rule 15(a) permits a plaintiff to amend its complaint "once as a matter of course" within 21 days of service of (i) the original complaint, (ii) a responsive pleading, or (iii) a motion under Rules 12(b), 12(e), or 12(f).  Rule 15(a)(1)(A)–(B).  "In all other cases," a party may amend its pleadings "with the opposing party's written consent or the court's leave."  Rule 15(a)(2).  The Rule further states that courts should "freely give leave when justice so requires."  *Id.*; *see A&D Auto. Sales, Inc. v. United States*, 748 F.3d 1142, 1158 (Fed. Cir. 2014) ("The Claims Court rules liberally provide for amendments of the complaint after the filing of the defendant's answer.").  It is well-established that the grant or denial of an opportunity to amend pleadings is "within the discretion of the [trial] court."  *Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1045 (Fed. Cir. 1992) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971)).  A court can deny a motion to amend if the movant "fails to explain how they would amend their complaint" or fails to demonstrate that amendment would not be futile.  *Dinh v. United States*, 145 F.4th 1316, 1326, (Fed. Cir. 2025) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006); *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403–04 (Fed. Cir. 1989) (quoting *Foman*, 371 U.S. at 182 (1962)).  A court is more likely to grant leave to amend where there is no "apparent or declared reason" that amendment would interfere with the proceedings, *A&D Auto. Sales*, 748 F.3d at 1158, and there is no evidence of "bad faith or dilatory motive" by the movant, *Foman*, 371 U.S. at 182.

Here, the facts weigh toward granting leave to amend, despite Plaintiff's failure to explain in its brief how it will amend the Complaint.  *See* Resp. at 13.  There is no "apparent or declared reason" why amendment would interfere with the proceedings, as the addition of one more count in an amended complaint where three other counts remain would not unduly prejudice Defendant.

*See A&D Auto. Sales*, 748 F.3d at 1158.  Similarly, there is no evidence here of "bad faith or dilatory motive" in seeking to amend the Complaint.  *See Foman*, 371 U.S. at 182.  However, Plaintiff has failed to explain in its Response specifically how it would amend its Complaint—a showing required to overcome the futility standard.  Resp. at 13; *Kemin Foods*, 464 F.3d at 1354–55; *see also JG Techs., LLC v. United States*, 156 Fed. Cl. 691, 715 (2021) (citing *Kemin Foods*, 464 F.3d at 1355) (rejecting plaintiff's request to file second amended complaint because "[p]laintiff's one-paragraph request lacks sufficient factual detail or legal argument to allow the Court to conclude that amendment would be a worthwhile endeavor").  Moreover, Plaintiff failed to specify if it would still seek leave to amend if the Court granted in part and denied in part Defendant's Motion.  *See* Resp. at 13.  Upon these considerations, the Court cannot grant Plaintiff's alternative motion to permit it to amend its complaint at this time; instead, the Court grants Plaintiff the opportunity to file a separate and more fulsome motion to amend its Complaint, which shall include a complete copy of its proposed amended complaint, and adequate support for all proposed amendments.[16]

## CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss in Part (ECF No. 8) pursuant to Rule 12(b)(6) and **DISMISSES IN PART** Count Three of Sand Point's Complaint, without prejudice, consistent with this Memorandum and Order.  Should Plaintiff seek to amend its Complaint, Plaintiff must **FILE** a motion to do so by **April 28, 2026**, explaining its support for any proposed amendments

---

[16] Although Plaintiff has met the standard to plead pretextual termination, Plaintiff may still move to amend its Complaint to include more details related to the alleged animus and explain how the alleged animus would have caused the pretextual termination.

including reasoning why an amendment consistent with this Memorandum and Order would not be futile.

IT IS SO ORDERED.



_Eleni M. Roumel_
ELENI M. ROUMEL
Judge

April 7, 2026
Washington, D.C.

23